# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE  DIVISION

Castille et al                                      Civil Action No. 12-02892

versus                                      Magistrate Judge Carol B. Whitehurst

Apache Deepwater LLC et al                      By Consent of the Parties

## MEMORANDUM RULING

Before the Court is a Motion For Summary Judgment filed by defendant, Island
Operating Company, Inc. ("IOC"), [Rec. Doc. 156] and Rory L. Castille and Natasha
Castille's Memorandum in response thereto [Rec. Doc. 173].  For the following
reasons, IOC's Motion will be granted.

### I.  Background

This action arises out of an accident on October 13, 2012, in which Rory
Castille (hereinafter "Plaintiff") sustained personal injuries and damages while
working on Apache's West Cameron 111-F unmanned satellite production platform
("WC 111-F") on the Outer Continental Shelf. At the time of the accident, Plaintiff
was employed by Total Safety, Inc. ("Total Safety") as a technician for navigational
aids and fire-fighting equipment. Plaintiff alleges he was injured when, after opening
the door to the wellhead master control panel ("MCP") on WC 111-F, he was
engulfed by a flash fire. *R. 1, ¶*.

Plaintiffs brought this suit on November 14, 2012. *R. 1*. Plaintiffs originally

sued Apache, the owner of WC 111-F, and IOC[1], the operator of the platform, "in the alternative in the event it is established that as operator it failed to take proper safeguards. . ."[2] Plaintiffs claimed that as a result of Defendants' negligence, Rory Castille ("hereinafter referred to as "Plaintiff") suffered and will continue to suffer bodily injuries, physical pain and mental anguish, physical impairment and disfigurement, loss of earnings, and medical expenses. *Id at ¶9*. Natasha Castille alleged a loss of consortium claim. *Id at ¶ 10*.

IOC filed the instant Motion for Summary Judgment seeking dismissal of Plaintiff's claims with prejudice. *R. 156*. IOC argues that the foregoing facts establish that no IOC production operator was ever in a position to prevent Plaintiff's accident. IOC further argues that it is not liable for Plaintiffs' alleged injuries because it did not assume nor did it owe a duty of care to Plaintiff.

No party has filed an opposition to the motion. Instead, the plaintiffs filed a

---

[1] IOC furnished contract production operators to Apache for WC 111-F, as well as other platforms in the WC 111-F field.

[2] Plaintiffs later filed multiple amended complaints alleging liability against the following party-defendants: Haskel International, Inc., as the manufacturer of the pump supply regulator, *R. 21*; Norgren, Inc. and/or Norgren, USA, as the manufacturer of the plastic regulator which allows pressure to flow to the Haskel pump; Vastar Resources, Inc. and/or BP America Production Company ("BP"), as the original owner of the WC 111-F platform, *R. 33*; Control Concepts, Inc. ("Control Concepts") and Linear Controls, Inc. ("Linear"), entities retained by Apache to inspect and/or repair the inside of the MCP on the WC 111-F platform, *R. 73*; and W-Industries of Louisiana, d/b/a Control Concepts and Technology ("W-Industries"), as the manufacturer of the MCP on the WC 111-F platform and who was retained by Apache to inspect, and/or repair the inside of the MCP on 111-F, *see R. 81, 132*. At the time of this ruling, all party-defendants had been dismissed except Apache, IOC, W-Industries and BP.

"Memorandum Regarding Island Operating Company, Inc.'s Motion For Summary Judgment." *R. 173.* In the Memorandum, the plaintiffs addressed the "pertinent facts" set forth by IOC in its memorandum in support of the Motion for Summary Judgment. *Id.* The plaintiffs state that they do not dispute the "pertinent facts" in support of IOC's Motion.[3] *Id.* Accordingly, the Court construes the plaintiffs' Memorandum as a concession that they have no objection to IOC's Motion for Summary Judgment and a concurrence that these facts are undisputed.

## II. Summary Judgment Standard

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed R. Civ P. 56(c); *Brown v. City of Houston*, 337 F.3d 539, 540–41 (5th Cir.2003). A material fact is a fact which, under applicable law, may alter the outcome of the suit. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir.2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir.2013). "The moving party bears the burden of demonstrating that there exists no genuine issues

---

[3] On June 1, 2017, the plaintiffs filed a Motion to Correct [Rec. Doc. 178-2 ] indicating that their Memorandum stating "Plaintiff does dispute that the report of Stephen Killingsworth...", *R. 173,* should state "Plaintiff does not dispute...."

of material fact." *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 776, 781 (E.D.La.2007). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir.2004). The non-moving party must then go beyond the pleadings and "identify specific evidence in the record and ... articulate the precise manner in which that evidence supports his or her claim." *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir.2008). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002).

### III.  Analysis

IOC contends it is not liable for Plaintiff's alleged injuries because it did not owe Plaintiff a duty to maintain and/or repair any parts located within the wellhead MCP on  WC 111-F which lead to Plaintiff's injuries.  It is undisputed that because this case arises on the OCS, the Outer Continental Shelf Lands Act ("OCSLA") mandates that the law of the adjacent state, in this case Louisiana, governs Plaintiff's claims to the extent that it does not conflict with other federal law and regulations. 43 U.S.C. § 1333(a)(2)(A); *McNeese v. Reading & Bates Drilling Co.*, 749 F.2d 270, 273 (5th Cir.1985) (state law is "surrogate federal law"). The Fifth Circuit has held

that Louisiana's "duty-risk" standard does not conflict with federal law. *Gates v. Shell Oil*, 812 F.2d 1509, 1516 (5th Cir. 1987) (citing *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364, 1369-70 (La.1984)).

"Negligence claims under Louisiana law undergo a five-part analysis: did the defendant owe a duty to conform conduct to a specific standard; was that obligation breached; was the breach the cause-in-fact of plaintiff's injury; was the breach the cause-in-law of plaintiff's injuries; and have actual damages been shown?" *McCarroll v. Wood Group Management Services, Inc.*, 561 Fed.Appx. 407, 409–10 (5th Cir. 2014). "In Louisiana the existence of a duty and its scope are questions of law. Duty varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved." *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994).

IOC contends that the following undisputed deposition testimony demonstrates the absence of a legal duty owed to Plaintiff by IOC under the facts and circumstances of this case.

### 1. Facts Related to IOC's Alleged Liability

IOC personnel were to perform visual inspections only of the inside of MCP's located on Apache's WC platforms (including WC 111-F) during the operators' regularly scheduled pollution inspections. *R. 156, Exh A, Depo of Price, p. 29; Exh D, Depo of Henry, p. 37*; *Exh H, Depo of Bourque, p. 25*. These visual inspections

were only to assure there were no leaks of hydraulic fluid nor any leaks going into the Gulf. *R. 156, Exh, A, Depo of Price, p. 41, 59*. In the event the IOC inspection revealed anything abnormal, the IOC employee was to inform "the Apache PIC[4] or [let] Control Concepts or Linear know." *Id., Exh H, Depo of Bourque, p. 34-35.*

On October 13, 2012, Plaintiff was scheduled to service the navigational aid system at WC 111-F. *R. 156*, *Exh. B*, *Plaintiff's Depo, p. 52.* This service was to include replacing the batteries for the foghorn located in the battery boxes on the production deck of the platform, and checking the synchronicity of the Navaid lights. *Id.* Before Castille departed the WC71-D platform to perform his work at WC 111-F, Apache's personnel—either area assistant production foreman John Price and/or Robert Bergeron, the lead operator/PIC on the WC71-D platform—decided Castille needed someone to accompany him. *Id.,Exh. G, Depo of Wilkerson, pp. 19-20.*

In the normal course of operations, Apache would have relied on IOC operators Steve Henry and/or Derek Wilson to make IOC's periodic scheduled pollution inspection visits to the WC111-F platform. *Id, Exh. A, Depo of Price, p. 29*. On the date of the accident, however, Apache "had too much work going on" and "… didn't have enough people to get over there [WC 111-F]." *Id, Exh G, Depo of Wilkerson, p. 64.* Therefore, Bergeron, *Id at p. 27*, and/or John Price decided David Wilkerson,

---

[4] Robert Bergeron was Apache's Person-In-Charge ("PIC") on the headquarters' platform, WC 71-D.

rather than Henry or Wilson, would accompany Castille, to WC 111-F. *Id at pp. 19;*

*64.* Wilkerson, who was in training and had never before been to WC 111-F, *Id at pp.*

*63-64*, was told to assist Castille with loading and unloading batteries at WC 111-F.

*Id, at pp. 19-20; 34.*

Wilkerson and Plaintiff were flown by helicopter from WC 71D to WC 111-F

on October 13, 2012. *Id at p. 20.*After they finished replacing batteries on WC

111-F's main deck, Plaintiff called for the Apache helicopter to  pick up him and

Wilkerson. *Id at pp. 38-39.* While waiting on the helicopter to arrive, Wilkerson, per

his instructions from Bergeron, carried the old/used batteries back up to the helipad,

making multiple trips up and down the stairs (i.e., to-and-from the helipad deck

level). *Id at pp. 44-46.* After having dropped off the second used battery on the

helipad deck, while descending the stairs from the helipad to the production deck,

Wilkerson heard a "loud thud."  *Id at p. 46.* He then approached Castille "with a fire

extinguisher and patted him out –." *Id at p. 47.* Subsequent to the ignition of the

subject flash fire, Wilkerson also sprayed the outside of the MCP door with the fire

extinguisher in an attempt to "snuff out the flame even more if there was one."[5] *Id at*

*p. 49.*

IOC asserts that the results of an investigation performed by the Bureau of

---

[5] In his deposition, Plaintiff testified that he opened the MCP on WC111-F after having heard a hissing sound coming from the MCP, and that the subject flash fire occurred instantaneously thereafter.

Safety and Environmental Enforcement (BSEE) suggested the flash fire of which the plaintiff complains occurred as a result of the failure of the subject "O" ring on a Haskell pump supply regulator located inside the wellhead MCP. *Id, Exh. A, Depo of Price, pp. 127-128; 151-152*. IOC performed no work inside of Apache MCP beyond the visual inspection; including no work on the regulators themselves, or their "O" rings. *Id, at pp. 27; 29; 33; 36–38; 41; 59; 71–73*. The condition of this "O" ring was not visible to Steve Henry and/or Derek Wilson. *Id at pp. 76-80; see also, Exh — Photographs of MCP exterior and interior*. The regulator and its "O" ring were beneath each of the Haskel Pumps. *Id at pp. 76-80.*

In their Response to IOC's Motion, *R. 173*, the plaintiffs state:

> Plaintiff does not dispute that the report of Stephen Killingsworth, plaintiff expert in safety/mechanical engineering, makes no mention of Island Operating Company.

> Plaintiff does not dispute that the investigation by BSEE concluded, in part, that the flash fire which caused injury/burning to the plaintiff, was a result of the failure of the subject "O" Ring on the "Haskell Pump" supply regulator (Norgren Regulator) inside the Wellhead Control Panel.

> According to all testimony elicited thus far, Island Operating Company's production operators were responsible only for visible inspection of the interior of the panel in question.

> Steve Henry and Derek Wilson of Island Operating Company did testify in depositions that they did not/could not view the conditions of the "O" Ring at any relevant time. Plaintiff cannot directly dispute, as Island Operating Company contends, that the company was not tasked to discover/report/inspect "O" Ring problems".

Plaintiff does agree that the breach of duty of other contractors/entities, including Apache, BP, W-Industries of Louisiana, etc. were responsible for plaintiffs injuries/damages.

Plaintiff does not dispute that Apache personnel (referenced primarily as John Price and Dennis Sonnier) controlled the day to day activities of lsland Operating Company's personnel, but would submit that they did not "control" Total Safety. (See Plaintiff s Memorandum in Opposition to Summary Judgment by Apache)

Plaintiff admits that Island Operating Company does not own the platform in question where the Wellhead Control Panel in question was located. (WC 111 F)

Plaintiff agrees with Island Operating Company's statement that Louisiana's "Duty Risk" Analysis is applicable by virtue of this accident occurring on the Outer Continental Shelf and the application of the OCSLA.

Plaintiff agrees that Apache's own "Normal Operations Procedures" for WC 111F expressly delineates that Island Operating Company is to perform "visual inspections only" of each panel for leaks, etc.

Plaintiff does not dispute the protocol employed by Island Operating Company to perform its "monthly inspections". Further, plaintiff does not dispute the contentions of Island Operating Company that Apache, along with Control Concepts, were responsible to maintain and repair internal parts on the Wellhead Control Panels on Apache's platforms in the WC field.

In conclusion, plaintiff does not dispute that Island Operating Company did not have ownership obligations nor custodial obligations of the Wellhead Control Panel on the platform in question. Further, plaintiff does not dispute that Island Operating Company had no "contractual relationship" with plaintiff's employer, Total Safety; nor did Island Operating Company, Inc. personnel supervise plaintiff s work methods on the date of accident.

The plaintiffs confirm the facts relied upon by IOC to establish that its motion for summary judgment should be granted. As there is no genuine issue as to any material fact, Plaintiff cannot meet the evidentiary burden to prove the elements required to recover on his negligence claim against IOC.

### *IV. Conclusion*

The Court finds that IOC has established the absence of any genuine issue of material fact as to an element of the plaintiffs claims for which the plaintiffs bear the burden of proof. The plaintiffs have not come forward with proof sufficient to create a genuine issue as to whether IOC owed a duty to Rory Castille; therefore, the plaintiffs' claims against IOC fail as a matter of law. Accordingly, IOC's motion for summary judgment [Rec. Doc. 156] will be granted, and the plaintiffs' claims against IOC will be dismissed with prejudice.

Thus done and signed this 20th day of June, 2017 at Lafayette, Louisiana.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**