# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Castille et al | Civil Action No. 12-02892 |
| versus | Magistrate Judge Carol B. Whitehurst |
| Apache Deepwater LLC et al | By Consent of the Parties |

## MEMORANDUM RULING

Before the Court is a Motion For Summary Judgment filed by defendant, B P America Production Company ("BP"), [Rec. Doc. 170], a Memorandum in response [Rec. Doc. 206] filed by plaintiffs, Rory L. Castille and Natasha Castille and BP's Reply thereto [Rec. Doc. 212]. For the following reasons, BP's Motion will be granted.

### *I. Background*

This action arises out of an accident on October 13, 2012, in which Rory Castille (hereinafter referred to as "Castille" or "Plaintiff") sustained personal injuries and damages while working on the West Cameron 111-F unmanned satellite production platform ("WC 111-F") on the Outer Continental Shelf. At the time of the accident, Apache was the owner of the WC 111-F and Plaintiff was employed by Total Safety, Inc. as a technician for navigational aids and fire-fighting equipment. The record provides that BP constructed the WC 111-F in approximately 2001-2002 and contracted with W-Industries for the fabrication of the WC 111-F's wellhead

master control panel ("MCP"). On April 1, 2006, Mariner Energy Resources, Inc ("Mariner") purchased BP's interests in the 111 block of the West Cameron field, including the WC 111-F. Mariner was acquired by Apache Deepwater LLC ("Apache") on November 10, 2010.

Plaintiffs filed this suit on November 14, 2012, alleging Castille was injured when, after opening the door to the MCP, he was engulfed by a flash fire which burned his face, chest and hands. *R. 1, p. 2*. Plaintiffs alleged that the fire emanated from a pressure regulator manufactured by Norgren, Inc., three of which were located inside the MCP. *Id*; *R. 33, pp. 1–3*. Plaintiffs specifically alleged with respect to BP, that BP was negligent in "[c]hoosing a plastic regulator not equipped to handle the pressures and temperature ranges utilized on [111-F]." *R. 33, p. 4*. BP filed the instant Motion for Summary Judgment seeking dismissal of plaintiffs' claims with prejudice. *R. 170.*

## II. Summary Judgment Standard

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed R. Civ P. 56(c); *Brown v. City of Houston*, 337 F.3d 539, 540–41 (5th Cir.2003). A material fact is a fact which, under applicable law, may

2

alter the outcome of the suit. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir.2001). A dispute is genuine when a reasonable finder of fact could resolve the issue in favor of either party, based on the evidence before it. *See Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir.2013). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Prods. Liab. Litig.*, 501 F.Supp.2d 776, 781 (E.D.La.2007). When considering a motion for summary judgment, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir.2004). The non-moving party must then go beyond the pleadings and "identify specific evidence in the record and ... articulate the precise manner in which that evidence supports his or her claim." *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir.2008). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002).

### III. Analysis

*A. Contentions of the Parties*

BP contends that plaintiffs' claims relative to the design, construction, or

fabrication of the MCP are statutorily perempted by La.R.S. § 9:2772, which establishes a peremptive period "for actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements thereon." Therefore, BP contends plaintiffs' claim are non-existent and must be dismissed. In the alternative, BP contends that plaintiffs cannot establish causes of action against BP pursuant to Louisiana Civil Code articles 2315 or 2317.1 because any duty owed by BP to plaintiffs, if existing, was assumed by Mariner upon purchase of BP's interests in the WC 111-F in 2006.

Plaintiffs argue that La. R.S. 9:2772 does not apply to BP as an owner of the WC 111-F and the MCP. They specifically cite subsection (F) of La.R.S. 9:2772, which provides that the statute does not apply to liability "otherwise imposed by law on the owner of an immovable." As to BP's alternative argument, plaintiffs dispute the jurisprudence that BP contends supports its argument that, as the former owner of WC 111-F, it has liability only if it knew of the defective condition of the MCP and failed to inform Mariner.

## B. Discussion

### 1. Peremption under La.Rev.Stat. § 9:2772

BP contends that it owned the WC 111-F platform, which was constructed around 2001 to 2002. As part of the construction of WC 111-F, BP contracted with

W-Industries for the fabrication of the platform's MCP. W-Industries' employee, Kenneth Castlebury was charged with the design of the MCP. *R. 170-3, Dep of Castlebury, pp. 14-15*. Castlebury represents that BP directed what was needed; he then designed it and fabricated it for their application. *Id., p. 21*. He further represents that BP witnessed the factory acceptance test to assure that the finished product was just like Castlebury's drawing and functioned as they required. *Id.* As to the plastic regulator, a Norgren R 72-G-2AT-RMN model, Castlebury made the decision to use that particular regulator. *Id., p. 18, 21-22*. The materials and component parts to fabricate the MCP were not ordered until BP's final approval of the drawings. *Id. p. 59*. Based on the bill of materials related to the MCP, BP's final approval was "no later than November 17, 2000." *Id, p. 60; R. 170-4*. Also, BP accepted the "as-built drawings" of the completed MCP no later than December 7, 2001, *R. 170-3, p. 61,* and accepted the physical, completed wellhead control panel from W-Industries no later than January of 2002. *Id, p. 65*.

Based on the foregoing, BP further contends that the plaintiffs' claim that "BP designed the panel and selected the parts, including the plastic regulator... incorporated into the wellhead control panel" and is therefore negligent by "[c]hosing a plastic regulator not equipped to handle the pressures and temperature ranges utilized on said platform," *R. 33, ¶¶ 6g, 6h*, are subject to the peremptive period

5

established by Louisiana Revised Statute Section 9:2772.[1]

"Peremption is a period of time fixed by law for the existence of a right." La. C.C. art. 3458. Unless timely exercised, a person's right to assert a cause of action is extinguished upon the expiration of a peremptive period. *Id.; see State Through Div. of Admin. v. McInnis Bros. Const.*, 701 So.2d 937, 939 (La.1997). Ordinarily, the party pleading peremption bears the burden of proof at the trial of the peremptory exception of peremption. *Rando v. Anco Insulations Inc.*, 16 So.3d 1065, 1082 (La.2009). Peremptive statutes are to be strictly construed against peremption and in favor of maintaining the claim. *Id.* at 1083. "Of the possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement should be adopted." *Id*.

"La. R.S. 9:2772, establishes the peremptive period for actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements thereon." La. R.S. 9:2772(A)(1) provides in pertinent part as follows:

> ... [No action, whether ex contact, ex delicto, or otherwise, including but not limited to an action for failure to warn, to recover on a contract, or to recover damages, or otherwise…shall be brought…against any person

---

[1] It is undisputed that, because this case arises on the OCS, the Outer Continental Shelf Lands Act ("OCSLA") mandates that the law of the adjacent state, in this case Louisiana, governs Plaintiff's claims to the extent that it does not conflict with other federal law and regulations. 43 U.S.C. § 1333(a)(2)(A); *McNeese v. Reading & Bates Drilling Co.*, 749 F.2d 270, 273 (5th Cir.1985) (state law is "surrogate federal law").

6

performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property…

(1) (a) More than five years after the date of registry in the mortgage office of acceptance of the work by owner.

(b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been thus occupied by the owner.

\* \* \*

B. (1) The causes which are perempted within the time described above include any action:

\* \* \*

(c) For injury to the person or for wrongful death arising out of any such deficiency.

(d) Brought against a person for the action or failure to act of his employees.

\* \* \*

E. The peremptive period provided by this Section shall not be asserted by way of defense by a person in possession or control, as owner, lessor, tenant, or other possessor interest, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury, damage, or death sued upon with regard to any cause of action arising out of the alleged delict, quasi delict, or obligation of any such person arising out of his possession or control of the property.

F. Nothing in this Section shall be construed as modifying the liability or responsibility otherwise imposed by law on the owner of an immovable or the possessor, lessor or lessee of an immovable, by reason

of the design, planning, supervision, inspection or observation of construction, or construction of improvements to immovable property.

"The Louisiana Legislature enacted La. R.S. 9:2772 in 1964 to protect building contractors from liability for past construction projects that could extend for an indefinite period of time." *Lemoine Company, LLC v. Durr Heavy Construction, LLC*, 206 So.3d 244, 249 (La.App. 1 Cir. 2016); *Celebration Church, Inc. v. Church Mutual Insurance Company*, 216 So.3d 1059 (La.App. 5 Cir. 2016) (citing *Thrasher Constr., Inc. v. Gibbs Residential, L.L.C.*, 197 So.3d 283 (La.App. 4 Cir. 2016)).

As the plaintiffs filed their original Complaint on November 14, 2012, and first asserted claims against BP on December 30, 2013, BP maintains that the claims against it are subject to the five year peremption period of § 9:2772 which became effective August 1, 2012. While the plaintiffs dispute that § 9:2772 applies to this case, they do not dispute that BP has cited the correct version of the statute.

In *Hefren v. McDermott, Inc.*, 820 F.3d 767 (5th Cir. 2016) the Fifth Circuit explained, "[u]nder the applicable Louisiana law, any action relating to a deficiency "in the design, planning, inspection, or observation of construction, or in the construction of any improvement to immovable property" ... is perempted if brought "[m]ore than five years after ... acceptance of the work by [the] owner." La. R.S. § 9:2772. Rather than simply "barr[ing] the remedy to be enforced" like a statute of limitations, this "peremptive statute ... totally destroys the previously existing right

so that, upon expiration of the statutory period, a cause of action or substantive right no longer exists to be enforced." *Id* at 771.

BP asserts it is well-settled that a fixed platform such as WC 111-F is an immovable. *Olsen v. Shell Oil Co.*, 365 So.2d 1285, 1290 (La.1978) (a fixed offshore drilling platform constituted an immovable "building"); *Bruyninckx v. Bratten*, 554 So.2d 247, 249 (La.Ct.App.1989). Furthermore, BP asserts, the "production and support facilities of the platform" which are "permanently attached" pursuant to Louisiana Civil Code article 466 are constitute "improvements to an immovable" for purposes of La.R.S. § 9:2772. *Miller v. Slam Offshore, et al.*, 2000 WL 1210837, *3 (E.D.La. 2000).

BP contends the facts of this case are "substantially similar" to those in *Miller*. *Id.* There, the plaintiff sued McDermott, Inc. for negligence in the design of the Lease Automatic Transfer Unit ("LACT") on the fixed platform, which caused plaintiff's injury. The LACT unit in question was "attached to the platform by bolts and welding," and "designed specifically to connect with the platform's piping, electrical instrumentation, drains, vents, and conduit." *Id*. McDermott filed a motion for summary judgment denying it was responsible for the design of the LACT, and alternatively filed a motion to dismiss the plaintiff's claims against it under § 9:2772. The court held that the production and support facilities of the platform, including the LACT, constituted an "improvement to an immovable" as required under § 9:2772.

9

*Id.* Further, the court reasoned that because McDermott was responsible for the design and engineering of the production and support facilities for the platform as a whole, its position was analogous to that of the design engineer and general contractor, and therefore, the peremptive period in § 9:2772 applied to the plaintiff's action against McDermott. *Id.*

The Court disagrees with BP's characterization that the facts in *Miller* are "substantially similar" to this action. Unlike this case, *Miller* makes no mention that McDermott was the owner of the platform, but instead indicates that McDermott was the engineer and contractor of the platform, including the "production and support facilities."[2] In the instant case, while there is no evidence that BP designed and fabricated the platform, it is undisputed that BP owned the platform and that W-Industries designed and fabricated the MCP.

The Court does not dispute BP's argument that the jurisprudence holds that an improvement to a fixed platform such as the MCP is "permanently attached" to the fixed platform so that it is also an immovable. The fact that the MCP constitutes immovable property is not dispositive. This is because "La.R.S. 9:2772 affords peremptory relief to professional contractors who improve immovable property belonging to third parties." *Billiot v. State*, 654 So.2d 753, 756 (La.App. 3 Cir.,1995)

---

[2] The Court is aware of McDermott Inc.'s offshore oil and gas activities only as an engineering contractor and fabricator.

(citing *Dugas v. Cacioppo*, 583 So.2d 26, 27 (La.App. 5 Cir.1991)). While the provision might have served to protect a contractor employed by BP, it does not apply to BP, owner of the platform. *See Billiot* at 756 (citing *Bruyninckx v. Bratten*, 554 So.2d 247, 249 (La.App. 3 Cir.1989)(finding the third party claims against McDermott, Inc, as the third party contractor, to be perempted under § 9:2772); *see also Hefren*, 820 F.3d at 759 (holding § 9:2772 applicable to plaintiff's "against McDermott as the designer and/or contractor"). In *Billiot*, the Louisiana Third Circuit held that § 9:2772 was not applicable to Forest Oil, the **owner** of an abandoned oil well and casing. Instead, the court found that La.R.S. 9:2772(F) expressly provides to the contrary: "Nothing in this Section shall be construed as modifying the liability or responsibility otherwise imposed by law on the owner of an immovable. . . ." *Id* at 756. Based on the foregoing jurisprudence, the Court finds that the defense of peremption under La.R.S. 9:2772 does not apply to BP in this case.

*2. Negligence Under La. Civ. Code arts. 2315 and 2317.1*

The plaintiffs alleged that BP's negligence in the design of the WC 111-F's MCP caused Castille's injuries. *R. 33, ¶¶ 6 (g), (h)*. As provided by BP, the plaintiffs' causes of action for negligence against BP are under Article 2315 (general negligence) and 2317.1 (an owner or caretaker's liability for a defective thing). Article 2315, the cornerstone of Louisiana tort law, provides: "Every act whatever of

11

man that causes damage to another obliges him by whose fault it happened to repair it." Article 2317.1 provides, "[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."

Louisiana courts employ a duty-risk analysis to determine liability for general negligence, and that analysis also informs cases under Articles 2317.1. Under this analysis, the plaintiffs must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached. Under the duty-risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. *McCoy v. Energy XXI GOM, L.L.C.*, 2017 WL 2544530, at *3 (5th Cir. 2017) (citing *Syrie v. Schilhab*, 693 So. 2d 1173, 1176–77 (La. 1997)).

In Louisiana, a former owner's duties with respect to repairing and maintaining property are assumed by a buyer upon the owner's purchase of the property. *See Kreher v. Bertucci*, 814 So.2d 614 (La. App. 4 Cir. 2002). A former owner of a property is liable for defective conditions in the property only "if the former owner

knew of the defective conditions prior to the transfer of the property and concealed those problems." *Bayer v. Omni Hotels Management Corp.*, 995 So.2d 639, 642 (La. App. 4 Cir. 2008). The parties do not dispute the fact that Mariner acquired ownership of WC 111-F prior to Castille's injury and that Apache, which subsequently acquired Mariner, was the owner and operator of WC 111-F at the time of Castille's injury ("Mariner/Apache").

Defendant argues that possession and custody of WC 111-F, and therefore the MCP, was transferred from BP to Mariner on April 18, 2006, before Castille's injuries occurred. BP cites cases in support of its contention that as the former owner of the allegedly defective property it cannot ordinarily be found liable under Louisiana law for injuries sustained by a third party due to those defects. *Kreher*, 814 So.2d at 616 (any duty owed to plaintiff was assumed by the buyer when they purchased the property, and the seller relinquished any duty owed to plaintiff when they sold the property), *Jones v. Briscoe*, 926 So.2d 599, 602 (La.App. 5 Cir. 2006) (citing *Kreher*), *Bayer*, 995 So.2d at 642 (same), *Raynes v. McMoran Exploration Co.*, 2011 WL 2181955, at *2 (E.D.La. 2011) (same).

Plaintiffs argue that these cases are distinguishable because the purchase agreements involved contained an "as is" clause and/or express waiver of rights against the former owner. They state that "BP does not provide any evidence that

Mariner purchased the platform and its improvement 'as is' or that Mariner expressly waived its rights against BP for hidden or latent defects." *R. 206, p. 3*. In its Reply, however, BP attaches the Purchase and Sale Agreement and the Assignment and Bill of Sale between BP and Mariner which included the sale of WC 111-F, *R. 213-1, 213-2*. The documents establish that BP sold the property "as-is" and that Mariner assumed the obligation for "any pre-existing defect." *R. 213-2, p. 42, ¶ 8.5*.

Neither party disputes the fact that Mariner acquired ownership of the platform prior to Castille's injury or that Mariner/Apache was "the owner and operator of the structure in question" at the time of such injury. Further, the plaintiffs point to no evidence that BP knowingly concealed the defect from Mariner when it sold the platform. Indeed, Mariner purchased the platform "as is" and it expressly waived its rights against BP. BP owed no duty to Castille as a matter of Louisiana law. *See Raynes*, 2011 WL 2181955, at *2 (granting summary judgment in favor of the former owner of a fixed offshore platform where "the plaintiff point[ed] to no evidence that [the former owner] knowingly concealed the defect from [the new owner] when it sold the platform.").

### *IV. Conclusion*

The Court finds that BP has established that any and all duties it may have owed to the plaintiffs were assumed by the new owner, Mariner. Accordingly, BP's

motion for summary judgment [Rec. Doc. 170] will be granted, and the plaintiffs' claims against BP will be dismissed with prejudice.

Signed July 11, 2017, at Lafayette, Louisiana.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE