# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Castille et al | Civil Action No. 12-02892 |
| versus | Magistrate Judge Carol B. Whitehurst |
| Apache Deepwater LLC et al | By Consent of the Parties |

## MEMORANDUM RULING

Before the Court is Plaintiffs, Rory L. Castille and Natasha Castille's, Brief In Support Of Declaratory Judgment [Rec. Doc. 286] and Memoranda in support of Rule 12(c) Motion For Judgment On The Pleadings Regarding Waiver Of Subrogation filed by Total Safety U.S., Inc. [Rec. Doc. 287] and Zurich American Insurance Company [Rec. Doc. 293]. For the following reasons, the Court will GRANT Plaintiffs' Declaratory Judgment.

### *I. Background*

This action arises out of an accident on October 13, 2012, in which Rory Castille (hereinafter "Castille") sustained personal injuries and damages while working on Apache's West Cameron 111-F unmanned satellite production platform ("WC 111-F"), on the Outer Continental Shelf. At the time of the accident, Castille was employed by Total Safety U.S., Inc. ("Total Safety") as a technician for navigational aids and fire-fighting equipment. Castille alleges he was injured when, after opening the door to the wellhead master control panel ("MCP") on WC 111-F, he was engulfed by a flash fire. *R. 1*. It is undisputed that Louisiana law applies to this case.

On November 14, 2017, Plaintiffs filed a Rule 19 Motion To Compel Zurich

and Total Safety U.S. Inc. As Required Joinder Of Parties And Alternative Memorandum In Support of Declaratory Judgment Under 28 USC § 2201. *R. 266*. Plaintiffs contended that, "on information and belief," Zurich and Total Safety "may jointly or separately be seeking certain rights of subrogation for potential reimbursement of workers' compensation benefits paid" to Rory L. Castille. *Id.* Sole Defendant, Apache Deepwater, LLC ("Apache"), filed a Memorandum In Response stating that it had no objection to a declaratory action as between Zurich, Total Safety and the Plaintiffs with respect to the compensation intervention, and whether those subrogation rights have been waived by Total Safety and/or Zurich. *R. 272.*

On January 31, 2018, the Court construed Plaintiffs' motion as one to amend its Complaint and add a Declaratory Judgment action against Total Safety and Zurich. The Court granted the motion and ordered that they amend their Complaint to assert such action. The Amended Complaint was filed on February 6, 2018. Total Safety and Zurich answered the complaint on February 21, 2018. On the same date, the parties filed the memoranda before the Court as to whether or not Total Safety and/or Zurich contractually waived their rights of subrogation of their claims for reimbursement of workers' compensation benefits paid to Castille.

## *II. Contentions of the Parties*

Plaintiffs contend that Total Safety accepted full indemnification within the indemnity clause in the Master Service Contract ("MSC") between it and Apache. *R. 285-1*. Plaintiffs further contend that, as required by the MSC, Total Safety and Zurich, Total Safety's insurer, were bound through a Waiver of Subrogation Clause

wherein they waived any rights to seek subrogation or reimbursement for all insurance coverage including worker's compensation payments made to injured employees such as Castille. *Id., Exh. A,* ¶ *8.* Plaintiffs seek a declaration that Zurich and Total Safety are bound by the terms of the MSC, including honoring their waiver of subrogation rights, and are not entitled to enforce a lien on any proposed settlement or judgment that Plaintiffs may enter into.

Total Safety and Zurich argue that the LOAIA, Section G, applies to the waiver of subrogation rights in the MSC executed by Total Safety and Zurich. They contend that Section G of the LOAIA prevents Total Safety from being held liable in tort, as the indemnitor of Apache, and also under the LHWCA, by paying worker's compensation benefits to Castille. Total Safety and Zurich further contend, in the alternative, that even if the Court holds that Section G of the LOAIA does not apply and there is no impediment to the waiver of subrogation, the MSC itself provides that the waiver is ineffective as to the claim. *R. 287-2, Exh. A,* ¶ *12.*

### *III. Legal Standard*

In their memoranda, the parties request declaratory relief in the form of a legal conclusion by the Court on the issue of the waiver of subrogation as it relates to the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"). Total Safety styles its memorandum as a Motion For Judgment On The Pleadings and Zurich adopts Total Safety's motion. *R. 287, 293.* The Court will accordingly consider this requested relief in the context of judgment on the pleadings in a declaratory judgment action. *See, e.g.,Caliste v. Cantrell*, 2017 WL 6344152, at *2 (E.D.La., 2017)(applying

Judgment on the Pleadings standard of review in declaratory judgment action involving interpretation of CGL insurance policy).

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). The purpose of Rule 12(c) is to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. *Great Plains Trust. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). In deciding a 12(c) motion, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To avoid dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Judgment on the pleadings is appropriate where there are no disputed issues of material fact and only questions of law remain. *Stewart v. Grand Isle Shipyard, Inc.*, 2011 WL 6778804, at *1-2 (E.D. La. Dec. 23, 2011). As a general rule, in considering a Rule 12(c) motion, a district court must limit itself to the facts stated in the complaint. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). The Fifth Circuit has made exceptions to this limitation. *See Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (holding that a district court may look to the substance of the pleadings and any judicially noticed facts); *see also Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887 (5th Cir. 1998) (holding that the district court could consider documents attached to the complaint); *Great Plains Trust Co. v. Morgan Stanley*

*Dean Witter & Co.*, 313 F.3d 305, 310 (5th Cir. 2002)(affirming district court's Rule 12(c) dismissal where the court considered documents that were referred to in the complaint even though they were not physically attached to the complaint). Nonetheless, granting a Motion for Judgment on the Pleadings "is appropriate only if material facts are not in dispute and questions of law are all that remain." *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998).

### *IV. Analysis*

The record provides that Castille was working in the course and scope of his employment with Total Safety performing work for Apache pursuant to a March 18, 2014 Master Service Contract ("MSC") between Total Safety and Apache.[1] *R. 285-1*. The MSC required Total Safety to "defend, indemnify and hold [Apache] harmless from and against, all suits, actions, claims, losses, damages, costs . . . and demands by whomever brought . . . arising from or related in any way to performance of the work hereunder. . ." *R. 285, p. 5*; *R. 285-1, ¶ 13. H.*

Exhibit "A" of the MSC governs the insurance Total Safety was required to obtain[2] and provides in Paragraph 2:

---

[1] On November 10, 2010, Apache purchased Mariner Energy, Inc. and thereby acquired all of its oil and gas assets in the Gulf of Mexico. *R. 161-5*. Also, Apache succeeded to all of Mariner Energy, Inc.'s rights and/or obligations pursuant to any and all contracts previously entered into by Mariner Energy, Inc., including those rights pursuant to the Master Service Contract between Mariner Energy, Inc. and Total Safety. *Id.* The Court will not refer to Mariner as a party to the contract but instead will refer only to Apache.

[2] The Court is unsure as to the reason that Plaintiffs attach to and cite in their brief the Master Service Contract between Apache and Island Operation Company, Inc. *R. 286-1.* The Court has previously held that "Island Operating Company had no 'contractual relationship' with plaintiff's employer, Total Safety; nor did Island Operating Company, Inc. personnel supervise plaintiff's work methods on the date of accident. *R. 198.* The Court will therefore construe only the provisions in the MSC between Total Safety and Apache.

> Contractor [Total Safety] shall cause the Mariner Group [now, Apache] to be included as additional insureds and the Contractor shall ensure that the respective insurers waive all rights of recover against [Apache] . . .

*Id., Exh. A, ¶2.* Paragraph 6.A requires Total Safety to procure worker's compensation insurance covering liabilities arising under the Longshore and Harbor Worker's Compensation Act and the Outer Continental Shelf Lands Act[3], and Paragraph 6.B requires Total Safety to procure Comprehensive General Liability insurance. *Id., Exh. A, ¶2.* Paragraph 7 requires:

> All policies required by this Contract shall be endorsed to delete the "other insurance" provision of Contractor's policies and to provide that all Contractor's policies shall be primary insurance and all [Apache] policies shall be excess insurance.

*Id., Exh. A, ¶ 7.* Paragraph 8 provides:

> Following the execution of this Contract, Contractor shall promptly obtain from all its insurers a waiver of subrogation against Mariner and the Mariner Group as herein above provided [. . .]

*Id., Exh. A, ¶ 8.* Paragraph 12 provides:

> In the event that this Contract is subject to Louisiana Revised Statute 9:2780, as same may be amended from time to time, and so long as that Statute, as presently existing or hereafter amended, is in force, then Contractor shall not be required to name Mariner or the Mariner Group [Apache] as Additional Insureds, nor shall Contractor be required to obtain a waiver of subrogation endorsement as to [Apache], as herein provided, if doing so would be in contravention of the Statute.

*Id., Exh. A, ¶ 12.*

---

[3] Defendants make a statement in their briefs as to a provision of Total's Safety's workers' compensation policy with Zurich at "Exhibit B." The Court finds no such provision in Exhibit B of the MSC [Rec. Doc. 285-1].

*A. Section G of the LOAIA*

Defendants contend that Section G of LOAIA makes the contractual waiver of subrogation between Apache and Total Safety null and void. *R. 287*. Louisiana Revised Statutes § 9:2780 establishes the LOAIA. In a case such as the instant one, Section G of the LOAIA voids the obligations of waivers of subrogation and additional named insured endorsements. Section G states:

> G. Any provision in any agreement arising out of the operations, services, or activities listed in Subsection C of this Section of the Louisiana Revised Statutes of 1950[4] which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the provisions of this Section, shall be null and void and of no force and effect.

§ 9:2780 (G). Based on the language in Section G, Defendants argue that in the event the jury finds fault on the part of Apache, Apache's indemnitor, Total Safety, will pay the judgment. Because Total Safety was Plaintiff's employer, Plaintiff will recover from Total Safety first, as the indemnitor for Apache's fault and second under the LHWCA, as Plaintiff's employer. Defendants argue that Section G of the LOAIA invalidates the waiver of subrogation and allows Total Safety to enforce its rights under the LHWCA to subrogate against the tort judgment.[5]

---

[4] The "Subsection C" referenced in Section G states "The term 'agreement,' as it pertains to a well for oil, gas, or water, or drilling for minerals means any agreement or understanding .... concerning any operations related to the exploration, development, production, or transportation of oil, gas, or water, or drilling for minerals ..." La.Rev.Stat. § 9:2780(C).

[5] The Court notes that Paragraph 36 the MSC, Applicable Law, states, "the interpretation, construction and effect of his Contract. . . shall be governed by the principles of the General Maritime Law and the admiralty and maritime laws of the United States. However, in the event the laws of any state otherwise may apply, the parties hereto agree that this Contract shall be governed by the laws of the State of Texas, to the extent not inconsistent with or superseded by the General Maritime Law and admiralty and maritime laws of the the United States. . . ." This action is between two Texas Companies in which the Plaintiff was working on the OCSLA on a fixed

7

Plaintiffs counter that Total Safety voluntarily and "with eyes wide open" accepted the indemnification provision via the MSC with Apache. They state the Court must take Judicial Notice that Apache's defense and indemnity has long been tendered to and accepted by Total Safety. Plaintiffs argue that Total Safety's established defense and indemnity of Apache precludes or estops Total Safety from arguing that Section G of the LOAIA invalidates its insurance defense and indemnity, and therefore Total Safety should also be equitably estopped from taking a contrary position via the waiver of subrogation issue "despite the fact that it may have a Self Insured Retention that would mandate it to pay a certain percentage of the workers' compensation benefits" paid to Plaintiff. *R. 286, p. 11*.

The Court agrees. The record is clear and undisputed. The Court takes Judicial Notice that Apache's defense and indemnity has been tendered to and accepted by Total Safety. Unable to withdraw from Apache's defense, Total Safety's present position is that its decision to agree to the subrogation provisions in the MSC should now be disregarded and it should be allowed to retract its waiver of subrogation. Defendants' position is without jurisprudential support. Nor is Defendants argument supported under Section G of the LOAIA or the MSC.

Defendants state that "the purpose of Section G is to ensure the oilfield services contractor does not have to pay twice." *R. 287-1, p. 6*. They contend that enforcing the waiver of subrogation in this case would "thwart" the aims of Section G because Total Safety, an oilfield services contractor, will pay twice—for the entire

---

platform in territorial waters of Louisiana. While the Court is unaware of any choice-of-law analysis, the parties have submitted only Louisiana law.

compensation payment (as Apache is the sole remaining defendant) and for its own required LHWCA benefits. Both parties cite *Fontenot v. Chevron USA, Inc.,* 676 So. 2d 557 (La. 1996) and its progeny. While those cases did result in validating *Fontenot* as authority that the waiver of subrogation clause does not violate the LOAIA, they do not support Defendants' argument in this case because their holdings are premised on the contractor paying only once. *Id., see also Hudson v. Forest Oil Corp.*, 372 F.3d 742 (5th Cir. 2004); *Guidry v. Chevron U.S.A., Inc.*, 2011 WL 3584353 (W.D. La. Aug. 8, 2011); *Bickham v. ATP Oil and Gas Co.*, 2011 WL 5878139 (E.D. La. Nov. 23, 2011); *Boudreaux v. Scott's Boat Rentals, LLC*, 184 F. Supp. 3d 343 (E.D. La. April 22, 2016).

In *Fontenot* the Louisiana Supreme Court stated that the, "purpose of the legislature [sic], and thus the policy interest of the state, is to protect certain contractors, namely those in oilfields, from being forced through indemnity provisions to bear the risk of their principals' negligence.... This is an exception to general Louisiana contract law that allows a principal to be indemnified against his own negligence so long as that intent is clearly expressed.' Thus, it is clear that Louisiana's Anti-Indemnity Act 'arose out of a concern about the unequal bargaining power of oil companies and contractors and was an attempt to avoid adhesionary contracts under which contractors would have no choice but to agree to indemnify the oil company, lest they risk losing the contract.'" *Fontenot* at 563 (citing *Rodrigue v. Legros*, 563 So.2d 248, 254 (La.1990) (emphasis supplied)).

Here, Total Safety, a leading, sophisticated oilfield contractor,[6] made a business decision to **voluntarily** agree to indemnify and defend Apache and waive its right to subrogation. Such decision was presumably made to foster its business relationship with Apache under the belief that it would gain future work and income from Apache by agreeing to the terms of the MSC, regardless of the consequences. Total Safety did not face "the historical inequality in bargaining power between oil companies and oilfield workers which Louisiana's Anti–Indemnity Act sought to rectify." *Id.* Section G of the LOAIA prevents a powerful oil company, such as Apache, from *requiring* that an oilfield contractor succumb to such provisions. There is nothing in the statute which *prohibits* an oilfield contractor from making a voluntary decisive choice to avoid the safe harbor of the Act.

It is axiomatic that indemnity is the obligation of a single party to be fully or primarily liable for damages so that the indemnitor steps into the shoes of the indemnitee. Here, Total Safety "stepped into the shoes" of Apache when it agreed to the indemnification clause of the MSC. Total Safety now contends it will pay double - which is contrary to Section G of the LOAIA. The Court disagrees with Total Safety's statement. *Total Safety* (and/or its insurer) will only pay the worker's compensation it owes to Plaintiff as his employer. In the event Total Safety pays an award for damages it will do so "in the shoes" of *Apache* and Total (and/or its CGL carrier) will pay on behalf of Apache. In other words, Total Safety will only pay once and Section

---

[6] Accordingly to their website, www.totalsafety.com, Total Safety is "the world's leading premier global provider of integrated safety services, strategies and equipment for hazardous environments."

G does not apply.

*B. Paragraph 12 of the MSC*

Alternatively, Defendants argue that the language in Paragraph 12 of the MSC "takes back the waiver of subrogation." *R. 287-1, p. 9.* They contend that the "sensible reading of the paragraph [12]" is that "the contract is prospective" and therefore "withdraws the requirement that Total Safety add Apache as [an] additional insured or to obtain an endorsement waiving subrogation." *R. 287-1, p. 10.* Defendants contend that any other reading of Paragraph 12 renders it a nullity.

Again, Defendants ignore the fact that Total Safety agreed to and did in fact add Apache as an additional insured and obtain a waiver of subrogation rights. Total Safety, as a leading oilfield contractor was not *required* to do so—it made a business decision to do so. Such action was not the concern of the Legislation when the LOAIA legislation was passed. Total Safety is not seeking to invalidate the indemnification/additional insured requirement, instead it seeks to invalidate the waiver of subrogation as to its LHWCA payments which were paid by Total Safety under an SIR rather than by its insurer. *R. 287-1, p. 6.* Any tort payment Total Safety may be required to pay to Castille results in Total Safety stepping into the shoes of Apache, whereas any payment Total Safety has made and may make in the future to Castille under its obligations as Castille's employer is that of Total Safety as required under the LHWCA. That Total Safety satisfied the LHWCA through an SIR was of its own volition and is of no moment to this analysis. Thus, *Total Safety* will not "pay twice" and Paragraph 12 of the MSC does not apply to the circumstances in this case.

11

*V. Conclusion*

Based on the forgoing, the Court finds that Total Safety and its compensation carrier, Zurich, have waived the right of subrogation and the Court will grant the Plaintiffs' Declaratory Judgment action.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 19th day of March, 2018.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE